Gaeland, J.
delivered the opinion of the court.
The plaintiffs commenced three suits on four promissory notes given by defendant, amounting to $1970, payable at different periods, which being consolidated the defence is the same in all, though there are different answers in the record. The defendant says the consideration of the notes, as well as several others given by him to plaintiffs and paid, was a large quantity of trees sold by them and warranted as the Morus Multicaulis, which he says proved to be different kinds of the mulberry tree of little or no value, wherefore there has been a failure of the consideration of the notes, which he prays may be annulled; he also sets up a demand in reconvention, claiming $3600 cash, which he had paid the plaintiffs on account of the purchase previous to his discovery of the imposition, and a large sum for damages and loss of profits.
We have carefully examined the voluminous record and find the plaintiffs were importers from France of a large number of plants or slips, which they represented to be the Morns Multicaulis, and sold to the defendant for $5570, payable $600 cash, and the balance secured by eight notes for $600 each and one for $170, falling due at different periods. Five of these notes were paid. The plants or slips were delivered in boxes and packages, a large quantity resold in New Orleans, a number in Mobile and a portion shipped to Hew-Tork to dealers in trees and shrubs. Upon their arrival at the *106 latter place the consignees discovered they were not the genuine Moras [171] Multicaulis, and soon after, the persons to whom the defendant had sold here and at Mobile, having planted them, found that many would not vegetate at all, and such as grew, proved to be the white or Italian mulberry. Those to whom he sold on credit refused to pay him, and some who had paid for them called pn him to refund the money and some of the witnesses say they claim damages. The evidence satisfies us the sale of the protended Morus Multicaulis plants was the consideration of the notes, that the plaintiffs warranted them to be genuine, and there cannot be a doubt that they were themselves mistaken and imposed on, or they wilfully deceived the defendant.
The case was submitted to a jury who say that “ in the main action we, the jury, find a verdict for defendant, Dinn. In the action in reconvention we, the jury, find for William Dinn, as plaintiff, the sum of fhirty-six hundred dollars cash, against the defendants, II. & W. Anderson, and that William Dinn’s unpaid notes be surrendered up to him, and defendants, Ander.son, to receive from, Dinn an order on Garretson, Flushing, L. I., for the trees.” Upon this verdict after an ineffectual attempt on the part of the original plaintiffs to obtain a new trial, judgment was rendered in the main action in favor of Dinn, and in the reconventional demand it is adjudged he recover against II. & W. Anderson, $3600, and the notes sued on are can-celled and ordered to be given up; it is further ordered that Dinn file in court, his order on Garretson, the consignee of the trees in ITew-York, to deliver them to Anderson, for the benefit of whom it may concern.
This judgment the appellants ask us to reverse on various grounds and remand the case for a new trial. Our attention is first called to a hill of exception taken by the plaintiffs to the opinion of the court permitting two depositions to be read by defendant, to which they .objected on the ground that all the cross-interrogatories were not answered by the witnesses. It [172] appears they were not all answered, and if the .counsel of Dinn had not taken a rule cn the plaintiffs previous to the trial, to show cause why the depositions should not be read, which was made final, it is certain the depositions must have been excluded in accordance with- the previous decisions of this court. 6 Martin, E". S. 313 ; 13 La. Eep. 109. It appears to us that the 17th section of the Act of March 20th, 1839, includes such an irregularity as the one under consideration. If the justice of the peace neglected or refused to take down the answer of the witness, it is an irregularity in the execution of the commission, as well as an omission of duty, which we think ought to have been inquired into under the rule taken. The defendant was no doubt aware of the objection, and having given his adversaries an opportunity of availing themselves of it, and they not doing so, we concur with the court below in the opinion that the objection came too late.
It is objected that the verdict is bad as it does not cover all the issues between the parties. That it is special, and omits to find for the plaintiffs or the defendant all the matters in controversy. W& have examined it carefully and compared it with the issues, which at first seem confused, in consequence of the number of answers filed before the suits were consolidated, but we cannot detect the discrepancy. It is true the verdict does not tech *107 nically take up each question or issue as at first presented, but it substantially settles all the points in controversy. In the main action; which we understand to be on the notes, the finding is for the defendant generally, the re-conventional demand is then decided in terms sufficiently precise to show the points settled by it. The insertion of the word cash in the verdict seems to be surplusage, as it would have been intelligible without it. We do not understand it as limiting the finding to the money actually paid, but .as covering the issue made as to the damages also.
After the closest scrutiny, we are unable to discover any material variance between the verdict and the judgment as is alleged. They conform :n every particular, and nearly so in the language used. But if the judg- [173] ment be different from' the verdict, it is not a cause for a new trial if the latter be correct; we should do no more than amend the judgment so as to make it conform to the verdict, but we do not find that necessary.
It is said the defendant recovers more than he claims in reconvention. That is a mistake. He claimed upwards of $8600, and the verdict and judgment are for less than half that sum.
The appellants-say they should have credit for about $2200 for genuine trees sold in Mobile. The evidence shows that no genuine plants or trees were sent to Mobile at all. The defendant ought not to pay the plaintiffs the t money for which the spurious trees were sold, as he is responsible to the purchasers for it, and it is shown that in several cases, they have reclaimed it with damages. The only genuine trees in the whole lot were something over four thousand sent to Garretson in New-York; for them as well as others in his hands, Dinn has given an order to deliver them to plaintiffs. They are yet in existence, as Garretson says he planted them on account of whom it might concern and is ready to give them up on the payment of Ms expenses.
The equity of the case is we think strongly in -favor of the defendant.
The judgment of the commercial court is therefore affirmed with costs.