(124 So. 837)

No. 30080.

HAWKINS v. COSTLEY et al.

Nov. 4, 1929.

Dart & Dart and Leo L. Dubourg, all of New Orleans, for applicant.

Spearing & Mabry, of New Orleans, for respondents.

OVERTON, J. Plaintiff brought this suit against Frank D. Costley and Robert A. Davis on a check drawn by Costley to the order of Davis for $500, and indorsed by Davis to the order of plaintiff, the demand being for the face of the check, with legal interest thereon, and for $3.10 protest fees. Plaintiff alleges that he is the holder of the check in due course. The defense is that plaintiff is not a holder in due course, and that nothing is due on the check.

Preparatory to trial, at the instance of plaintiff, his evidence, as well as that of his only witness, was taken in Arkansas, under commission. When the commission was returned, plaintiff ruled defendant to show cause why the depositions should not be read in evidence. It does not appear what, if any, objections were urged on the trial of the rule to reading the depositions in evidence, but it does appear that the rule, on the trial thereof, was made absolute, and the depositions permitted to be used in evidence, "with the reservation of the right to object to testimony." On the trial of the case, when plaintiff offered his deposition and the deposition of his witness, the defendant, Costley, objected to the introduction of the depositions on the ground that the witnesses did not respond to the questions propounded them, and on the ground that plaintiff did not annex to his deposition certain checks that were called for, and did not attach thereto a note which he testified he gave for the check. These objections were sustained. Immediately thereafter the trial of the case was discontinued, though for a cause not connected with the sustaining of the objections. The trial was resumed later before another division of the court, where the ruling made by the first division was recognized and enforced. As a result of the ruling, plaintiff was left without the evidence he relied upon to show that he was a holder in

due course, and judgment was rendered against him as in case of nonsuit.

The case was then taken to the Court of Appeal for the parish of Orleans. There the consideration of the depositions was again urged, but the Court of Appeal (123 So. 367) ruled that it could not review the ruling made excluding the depositions, because no formal bill of exception had been reserved to it, and because the record did not disclose any informal protest or objection to the ruling on the part of plaintiff. The court then, without considering the depositions, gave judgment annulling the judgment of nonsuit, rendered by the trial court, and rejected plaintiff's demand absolutely.

Plaintiff urges that the Court of Appeal is in error in refusing to review the ruling of the trial court, excluding the depositions. Plaintiff is correct. Act No. 61 of 1908, relative to providing an additional mode of taking bills of exception to rulings on evidence in civil cases, prescribes that: "Hereafter in civil cases it shall be unnecessary to reserve any Bill of Exception, or note in lieu thereof, to any ruling by a Trial Judge upon [the] admissibility or competency of any evidence tendered in a cause, but it shall suffice that the stenographic notes taken at the trial shall show that evidence was tendered and objected to, and shall set forth the nature of such evidence and ground of such objection, and the ruling of the Court thereon; and any such ruling shall be reviewable on appeal without the necessity of further formality."

It is therefore clear that, as to rulings in civil cases on the admissibility of evidence, it is unnecessary to reserve any bill of exception, or any note in lieu of such bill, but that it suffices that the stenographic notes taken at the trial show that evidence was tendered and objected to, and that these notes set forth the nature of the evidence tendered, the

ground of the objection thereto, and the ruling of the court thereon. When the stenographic notes, as is the case here, disclose these things, under the express language of the statute, the ruling is reviewable by the appellate court without the necessity of further formality. The Court of Appeal is therefore in error when it holds that the record must disclose that the party against whom the ruling was made objected, or took exception in some form, to it. The Court of Appeal is not supported in its ruling by the case of Stovall v. Hubier, 143 La. 1028, 79 So. 830. That case is not pertinent to the question here presented. It did not involve a ruling on the admissibility of evidence, with which alone Act No. 61 of 1908 concerns itself, but involved the right to review, where no objection was made to the ruling of the court, the sustaining of an exception to an amended petition—a matter with which the Act of 1908 does not concern itself.

Not only should the Court of Appeal have reviewed the ruling of the trial court, but it should have overruled the objection made, and considered the depositions for what they may be worth. The objections urged against their reception came too late. Plaintiff had ruled defendant to show cause why the depositions should not be read in evidence, and the rule had been made absolute, when the defendant, Costley, urged the objections which were sustained. Under article 439 of the Code of Practice the effect of making the rule absolute was to preclude all objections founded on any irregularity in the execution of the commission to take the depositions. Therefore, the question to be considered is whether the objections urged, which relate to the alleged failure of the witnesses to answer questions, and of one of them, the plaintiff, to attach to his depositions certain papers, may

be considered irregularities in the execution of the commission.

When a commission is sent to an officer to take the evidence of a witness, it is his duty to see that the questions are answered, and that documents called for are attached to the answers. If he finds that a question has not been answered, or if he finds that a document called for has not been attached to the answer, he should call the witness' attention to the fact, and, if the witness refuses to answer the question or to attach the document, he should so state. We think this rule is not only founded in reason, to avoid the ruling out of an entire deposition because of the failure of the witness, which may be due to inattention or oversight, to answer a question or to attach a document, but is supported by Anderson v. Dinn, 17 La. 168. In that case it is said:

"Our attention is first called to a bill of exception taken by the plaintiffs to the opinion of the court permitting two depositions to be read by defendant to which they objected on the ground that all the cross-interrogatories were not answered by the witnesses. It appears they were not all answered, and if the counsel of Dinn had not taken a rule on the plaintiffs previous to the trial, to shew cause why the depositions should not be read, which was made final, it is certain the depositions must have been excluded in accordance with the previous decisions of this court [Baker v. Voorhies] 6 Martin (N. S.) 313; [Hosea v. Miles] 13 La. Rep. 109. It appears to us that the seventeenth section of the act of March 20, 1839 [now article 439 of the Code of Practice], includes such an irregularity as the one under consideration. If the justice of the peace neglected or refused to take down the answer of the witness, it is an irregularity in the execution of the commission, as well as an omission of duty, which

235

we think ought to have been enquired into under the rule taken. The defendant was no doubt aware of the objection and having given his adversaries an opportunity of availing themselves of it, and they not doing so, we concur with the court below in the opinion that the objection came too late."

█ In the case at bar, the witness Roney answered fully all the interrogatories propounded to him, and attached the only document he was asked to attach to his deposition. Plaintiff also appears to have answered every interrogatory propounded to him. He, however, in answering a cross-interrogatory, failed to attach, assuming that it was within his power to have done so, a note which he testified he gave his bank for the check, when the latter was returned dishonored, and also certain checks which he testified that he drew against the bank after depositing the check, forming the basis of this suit. As to these checks, plaintiff testified that he did not know where they were at the time the interrogatories were answered, but that, if he found them, he would attach them.

The notary before returning the commission should have called plaintiff's attention to his failure to attach the note and the checks, and had him attach them or have taken his answer, showing why he did not. The irregularity is attributable to the manner of executing the commission, and was unavailable as a basis of objection to the reading of the depositions after the rule to show cause had been made absolute.

The fact that the rule was made absolute with the qualification that the right was reserved to object to the testimony does not alter the case. That qualification, properly interpreted, existed without such reservation. It merely has reference to such objections as are not founded on irregularities in executing the commission. It would serve no purpose to

236

make the rule absolute, and yet leave open, to be urged during the trial, objections based upon irregularities in executing the commission, which are the only irregularities that may be disposed of by rule, taken under article 439 of the Code of Practice. The very purpose of that article is to make it possible, to avoid being taken by surprise during the trial, to dispose of such irregularities prior to trial.

█ Another complaint urged by plaintiff against the judgment under review is that the Court of Appeal has changed the judgment of the lower court from one nonsuiting plaintiff to one rejecting his demand absolutely, when there was no answer to the appeal, asking for such a change, and when plaintiff, against whom the change was made, alone had appealed. Since we have concluded to remand the case, this complaint has lost its importance. Nevertheless, we shall pass upon it, as possibly the same question may arise again. As defendant, Costley, was appellee, if he desired any change made in the judgment he should have filed timely an answer to the appeal and asked for the change. He did not do so. Therefore the Court of Appeal should not have made the change.

In our view, this case should be remanded to the Court of Appeal, for the judgment rendered by it was rendered without considering, by far, the greater part of plaintiff's evidence.

For the reasons assigned the judgment of the Court of Appeal is set aside, and this case is remanded to that court to be proceeded with according to the views herein expressed, the defendant Costley to pay the costs of this court, the remaining costs to abide the final decision of the case.

O'NIELL, C. J., concurs in the result, on the ground that the failure of the witness to annex to his deposition the documents which

were called for did not affect the admissibility of the deposition in evidence, although it may have affected the sufficiency or even the credibility of the testimony.

ROGERS, J. (dissenting). I agree with the statement in the majority opinion that the Court of Appeal, in the absence of any formal complaint by the appellee, was powerless to change the judgment of the district court from one of nonsuit to one rejecting plaintiff's demand. If the decree merely ordered the Court of Appeal to modify its judgment in that respect, I would concur in it. But the decree goes further than that and annuls the judgment, ordering the Court of Appeal to review the ruling of the district court, which the opinion indicates is erroneous, excluding plaintiff's deposition.

My own conclusion is that the ruling complained of is correct. The record shows, as I understand it: That the defendant Costley never received any consideration whatever for his check, which he delivered to one Robert A. Davis, who was to hold it until a certain business organization was formed. That Costley, after delivering the check, reconsidered his action and the same afternoon notified Davis that he would not proceed with the matter and requested the return of the instrument. That Davis refused to comply with Costley's request and hurriedly sent the check to the plaintiff, Hawkins, a resident of Arkansas, who deposited it for collection, which, however, was not made, because Costley, in the meantime, had stopped its payment.

Costley sets up by way of defense to plaintiff's action that Davis forwarded the check to Hawkins solely for the purpose of giving the instrument the appearance of being held by an innocent third person, whereas Hawkins had actually never parted with anything of value for the check, and had merely deposited it for collection in order to assist Davis in wrongfully securing money from the defendant.

It is stated in the brief filed on behalf of Costley that he had attempted to take the testimony of Hawkins by commission, but that the commission had been returned unexecuted because Hawkins could not be located at El Dorado, where he resided, and where he had deposited the check for collection. But, however that may be, it is certain that Hawkins presented himself as a witness in his own behalf in Arkansas and gave his deposition, which was returned to the city of New Orleans. It is certain, also, that Costley was unable to procure the testimony of Davis on the trial of the case, because each time the case was fixed Davis could not be found, although he was duly subpœnaed as a witness by Costley.

The record is not entirely clear as to what actually happened on the trial of the rule taken by plaintiff's attorneys to have plaintiff's deposition read in evidence. It is plain, however, that defendant's attorneys were present in court and opposed the motion. It is also plain that the court reserved the right of the defendant Costley to object to the testimony.

It is thought by the majority of the court, as set forth in their opinion, that the qualification mentioned in the judgment on the rule to read the deposition refers only to such objections as are not founded on irregularities or informalities in the execution of the commission. The best evidence of what the qualification was intended to mean, I respectfully suggest, is ascertainable from the subsequent ruling of the judge who had rendered the judgment, when the deposition

was actually offered in evidence on the trial of the case on the merits. The judge, at that time, maintained the objection of Costley's attorneys that the witness had not fairly and fully answered the cross-interrogatories propounded nor produced and attached certain documents called for by the defendant to the deposition, and excluded plaintiff's testimony. This ruling was followed by that of another judge of the same court, to whom the case was transferred, when plaintiff again attempted to offer the deposition in evidence over defendant's objection.

Costley, who had charged plaintiff with fraudulently conspiring with Davis to mulct him out of his money, was entitled to a full and fair disclosure by plaintiff of his connection with the transaction, together with all the related documents. Plaintiff, on the other hand, if his conduct was open and above board, and he is actually the holder in good faith and for value of the check sued on, should have welcomed the opportunity of clearing himself of all wrongdoing in the matter by a full and candid statement of his connection therewith. The judgment of nonsuit rendered by the district court was fair to both parties, protecting Costley from the effect of an incomplete deposition, and preserving plaintiff's rights to reinstitute his suit and correct on the second trial of the case the defects in his deposition. This was clearly the intention, in my opinion, of the district judges who passed on the issue, and I think that intention was, on the whole, incorporated in the record of the case. In these circumstances, conceding the doctrine announced in Anderson v. Dinn, referred to in the majority opinion, is correct, I do not think that decision has any application here.

I therefore respectfully dissent from the majority opinion and decree herein.